Barger, *et ux. Ex'rs of* Athey *vs.* Collins.—*June,* 1830.

A proved a settlement with C on the 1st March, 1820, shewing a balance
due him of $1013, for building certain houses. C, under notice of set-off,
established payments to the amount of $195; and to shew that A had no
separate right of action, proved that he was a partner in two firms, one of
which furnished the bricks, and the other did the brick work of the houses,
and both of which rendered accounts in 1818 and 19, amounting to $2850,
for their respective claims. He also proved various receipts, during the
same years, of the individual partners of those firms for payments made
to them—some on account of such buildings generally—some for bricks,
— some for brick work, amounting in the whole to $1310. A then offered
to prove by one of his former partners, that his firm was dissolved about
the close of 1819, and its debts assigned to A. The county court admit-
ted the witness, and held that the settlement in 1820, was evidence of C's
knowledge of the dissolution of that firm, and the transfer of its debts to A;
but no evidence of the dissolution of the other firm being given, that court
also decided that the whole evidence did not furnish competent proof of
any balance being due to A individually. Upon appeal, held that this was
a question of fact for the jury.

**APPEAL** from *Baltimore* County Court.

Action of *Assumpsit.* The declaration contained counts
for work and labor, and materials found and provided, &c.
For money laid out and expended; and on an *insimul com-*

*putassent.* The defendant, (the appellee,) gave notice of a set-off, and pleaded *non-assumpsit*, and issue was joined.

At the trial the plaintiffs, (now appellants,) to support the issue on their part, and for the purpose of shewing that the defendant was indebted to the testator of the plaintiffs, offered in evidence the following paper, admitted to be in the hand-writing of the defendant:

("No. 1.) Settlement of accounts this 1st day of March, 1820, with *Walter F. Athey*, for bricks and brick work, and I do hereby acknowledge the following balance to be correct:

| | |
|---|---|
| Balance on Mr. *Higinbotham's* house, *Franklin* street, | $10 00 |
| Balance on six buildings, *north Charles* street, | 964 01 |
| On my account, | 39 61 |
| | $1013 62 |

Balance of one thousand and thirteen dollars and sixty-two cents. *James W. Collins.*"

Whereupon the defendant proved, under the notice of set-off, that he had paid for the use of *Athey* in his life-time, the following sums, to wit, $20, $30, $145; and for the purpose of shewing that the bricks furnished for the six buildings in *N. Charles* street, as mentioned in the above paper offered in evidence by the plaintiffs, were furnished by *Athey* and a certain *George Shoemaker*, as co-partners in the brick making business, under the firm of *George Shoemaker and Co.* and that the brick work done in the six buildings was done by the said *Athey* and a certain *Deter Barger*, as co-partners in the brick-laying business, under the firm of *W. F. Athey and D. Barger*, and that neither the bricks were furnished, nor any of the brick work done, by *Athey* in his individual character; the defendant produced and read in evidence the following accounts, which were admitted to be in the hand-writing of *Athey*:

" No. 2. Mr. *James W. Collins* and others, for six houses in *N. Charles street,* to *George Shoemaker & Co.*

| | | |
|---|---|---|
| 1818, Sep. To 348,500 bricks, at $8 pr. th. | 2788 | 00 |
| To 33,000 front bricks, at $15 pr. th. | 495 | 00 |
| To 150 long arch bricks, at $7 pr. hun. | 10 | 50 |
| To 110 rubbing bricks, at $7 pr. th. | 7 | 70 |

$3301 20

| | | |
|---|---|---|
| Cr. By 2000 front brick, at 15 dollars pr. th. - - $30 00 | | |
| Cr. By 450 common brick, at 8 dollars pr. th. - - 5 20 | | |
| Cr. By cash at sundry times, 2500 00 | | |

————2535 20

$766 00

To *W. F. Athey, and D. Barger,*

| | | |
|---|---|---|
| To laying 379,000 brick, at 3 50 pr. th. | 1326 | 50 |
| To laying 16,500 old brick, at 3 50 pr. th. - - - - - - | 57 | 75 |
| To pointing out roof of Boehmes' house, - - - - - | 1 | 00 |
| To poles, ropes, filing and penciling front, - - - - | 50 | 00 |

1435 25

Cr. By mortar, at sundry times,        3 00

$1432 25
776 00

| | | |
|---|---|---|
| Balance, - - - - - | $2198 | 25 |
| *Turner Morehead's* bill of dry goods, - - - - - | 275 | 75 |

$1922 50"

" No. 3. Mr. *James W. Collins* and others, to *Geo Shoe-maker & Co.*

| | | |
|---|---|---:|
| 1819, Apl. 17. | To 1500 paving bricks, at $11 pr. th. | 16 50 |
| | To 6,500 front bricks, at $15 pr th. | 97 50 |
| Aug. 16. | To 59,000 common bricks, at $8 pr. th. - - - - | 472 00 |
| | To 17,935 paving bricks, at 9 50 pr. th. - - - - | 170 38 |
| | | $756 38 |

| | | |
|---|---|---:|
| To *W. F. Athey and D. Barger,* | | |
| | To laying 64,000 bricks, at 3 50 pr. th. - - - | 224 00 |
| Aug. 16. | To paving 505 yards back and front, at 15 cts pr. yd. | 75 75 |
| | To digging for pavement and back wall, - - - | 3 00 |
| | To building five cake ovens, at 2 dollars each, extra, | 10 00 |
| | | $312 75 |

| | | | |
|---|---|---:|---:|
| Cr. By cash, | $128 50 | | |
| Cr. By 390 common bricks, at 8 dollars pr. th. | 3 12 | | |
| Cr. By 326 paving brick, at 9 50 - - | 3 09½ | | |
| Cr. By 403 front brick, at 15 pr. th. - - | 6 04½ | | |
| Cr. mortar, at sundry times, | 1 17½ | | |
| Cr. By 2¼ bushels lime, at 40 cts. - - | 90 | | |
| | | $142 83½ | |
| | | $169 92½ | |
| To 4 bushels lime got of Sinclair, at 40 cts. - - | | 1 60 | |
| | | $171 52½ " | |

And for the purpose of shewing, that when money was paid to either of said parties on account of bricks or of brick work as aforesaid, the respective party receiving the same gave receipts in his individual name; the defendant further gave in evidence the following receipts, which were all admitted to be in the hand-writing of the several parties whose names are signed thereto.

" No. 4. *Baltimore*, June the 30th, 1818, Received of *James W. Collins*, $200 on acc. of six buildings.

*Walter F. Athey.*

*Baltimore*, July 9th, 1818, Received of *James W. Collins*, $500 on acc.

*Walter F. Athey.*

"No. 5, *Baltimore*, July 17, 1818, Received of *James W. Collins*, $130 on acc. of brick delivered for the six buildings on *North Charles street.*

*George Shoemaker.*

"No. 6. *Baltimore*, August the 15th, 1818, Received of *James W. Collins*, $50 on acc. brick work on the six buildings *N. Charles street.*          *D. Barger.*

"No. 7. *Baltimore*, July the 31st, 1818, Received of *James W. Collins*, $150 on acc. brick delivered for the six buildings on *North Charles street.*

*George Shoemaker.*

" *Baltimore*, July the 25th, 1818, Received of *James W. Collins*, $70 on acc. of brick work, and on the first day of August $70.   $140.          *Deter Barger.*

" *Baltimore*, August 17, 1818, Received of *James W. Collins*, $120 on acc. of brick delivered at the six buildings *North Charles street.*          *George Shoemaker.*

" *Baltimore*, August the 8th, 1818, Received of *James W. Collins*, $70 on acc. of brick work on the six buildings on *North Charles street.*          *Deter Barger.*

And the defendant also offered in evidence the following account, and receipt thereon :

" Mr. *William Robinson* to *W. F. Athey, and D. Barger,*

Barger, *et ux. Ex'rs of* Athey *vs.* Collins.——1830.

1819, June. To digging for pavement, front and rear,   1 50
To setting stone steps and mending wall,   3 50
To finding some mortar for fire place,   25
To repairing wall of smoke house,   75
To laying 3500 bricks in pavements,
&c. at 3 50,   -  -  -  -  10 50

$16 50

Cr. By laying 800 bricks, at 3 50 pr. th.   2 80

$13 70

1820, Feby. 28. Received a note on demand for the above.
*W. F. Athey, & D. Barger.*"
To George Shoemaker, & Co.

June 28. To 500 front brick, at $15 pr. th.   7 50
To 3000 paving brick, at $10 pr. th.   30 00

$37 50

Cr. By 250 brick, at $8 pr. th.  -  -  2 00

$35 50

1820, Feby. 28. Received a note on demand for the above.
*Geo. Shoemaker, & Co.*

Admitted to be in the hand-writing of the said *Walter F. Athey.*

And also proved by the said *William Robinson,* that at the time of the payment thereof, to wit, on the 28th of February, 1820, he had not heard of any dissolution of the said co-partnership of *George Shoemaker & Co.* and did not hear of any dissolution thereof until some time afterwards. And also gave in evidence the following account, and receipt thereon:

"Mr. *Charles L. Boehme* to *W. F. Athey & D. Barger.*
1818, May 15. To repairing pavement at the alley,   $1 00
To 20 paving brick, at $11,   22
Sep. 26. To filing and penciling front,   12 00

$13 22

Received payment in full of the above, 13th October, 1820.

*W. F. Athey & D. Barger.*"

Also admitted to be in the hand-writing of the said *Walter F. Athey;* and also proved by *Charles L. Boehme*, that at the time of the payment thereof, to wit, in December, 1820, he had not heard of any dissolution of the partnership of the said *Athey & Barger*.

The plaintiffs then further gave evidence by the said *George Shoemaker*, that the co-partnership formerly existing between him and the said *Athey*, was dissolved about the beginning of December, 1819, and that in a short time thereafter, and before the 1st of March, 1820, he, the witness, assigned, for a valuable consideration, all his right and interest in said co-partnership concern, to the said *Athey;* that the said co-partnership was not indebted to any person at the time of such assignment; and that during the continuance of the said co-partnership in the years 1818, and 1819, they furnished to the defendant for the aforesaid six buildings, between 500,000 and 600,000 bricks, at various prices, from 8 to 15 dollars per thousand.

The defendant, by his counsel, then objected to the admissibility of the said *George Shoemaker* as a witness, to prove either the dissolution of the co-partnership of *George Shoemaker and Co.* in December, 1819, or that there was an assignment of all his interest in the claims of the said co-partnership by the witness, to the said *Athey*, or that there were no debts due from the said co-partnership at the time of such assignment; and also objected to the admissibility of the paper herein first given in evidence by the plaintiffs, as evidence of the knowledge by the defendant of the dissolution of the co-partnership of *George Shoemaker and Co.* and of defendant's knowledge of an assignment of all witness's interest in the claims of said co-partnership, to the said *Athey*, by the said *Shoemaker*. But the Court overruled all the aforesaid objections. Thereupon

the defendant, by his counsel, moved the Court for their opinion and direction to the jury, that upon all the foregoing evidence the plaintiffs are not entitled to recover in this action, because said evidence does not show any dissolution of the co-partnership of *W. F. Athey* and *D. Barger,* in the brick-laying business, or any assignment of its claims, or any knowledge thereof by the defendant; and because the whole of said evidence does not furnish legal or competent proof to go to the jury, of any balance due from the defendant to the said *Athey,* in his life-time, or, if of any balance, not of greater amount than the aforesaid set-off, proved as aforesaid, upon which this action can be maintained; which opinion and direction the Court, (Archer, Ch. J. and Kell, A. J. gave.) The plaintiffs excepted, and the verdict and judgment being for the defendant, the plaintiffs appealed to this Court.

The cause was argued before Buchanan, Ch. J., Earle, Martin, and Stephen, J.

*Moale,* and *S. I. Donaldson,* for the appellants, contended, 1. That there was evidence in the cause proper to be submitted to the jury, from which they might infer the dissolution of the partnership between *Barger,* and plaintiffs testator, and a transfer of *Barger's* interest to *Athey* in the same. 2. That if there was no evidence of dissolution of the partnership between *Barger,* and the testator of the plaintiffs, yet plaintiffs were entitled to recover whatever sum might be due from the defendant, to *Shoemaker* and *Athey,* there being proof of the dissolution of the last mentioned partnership, and of the assignment of *Shoemaker's* interest therein to the plaintiff's testator. 3. That the evidence in the cause furnished legal and competent proof to go to the jury, of a balance due from the defendant to the plaintiff's testator, greater in amount than the set-off proved by the defendant in this action, of the weight of which evidence the jury were the proper judges.

On the *first* point they cited *Davis vs. Davis,* 7 *Harr.* and *Johns.* 37. *Barger vs. Collins, Ib.* 219. *Allstan vs. Contee,* 4 *Harr. and Johns.* 352. On the *third* point they referred to *Laidlaw vs. Organ,* 2 *Wheat.* 182.

*Williams,* (*District* Att'y U. S.) for the appellee. 1. The settlement of March, 1820, upon which the plaintiffs rely, was founded on transactions admitted to be of a partnership character. It is not denied, that there was proof of a dissolution of the partnership between *Shoemaker* and *Athey,* and the defendant's prayer does not raise that question— the question presented is, was there evidence of a dissolution between *Barger* and *Athey,* and that the claim due that firm, was assigned to *Athey.* That this was known to defendant, and that with such knowledge he promised to pay— a promise to pay one of the partners a partnership debt, is not *per se* evidence of a dissolution and assignment. *Allstan vs. Contee,* 4 *Harr. and Johns.* 351. *Onion vs. Paul,* 1 *Harr. and Johns,* 114. 2. The accounts relied on, show, that a sum of money was due from the defendant, for bricks furnished, and for brick work, but there is no data by which it can be ascertained how much is due for each, and therefore the jury had no rule by which they could have found a verdict. *Davis vs. Davis,* 7 *Harr. and Johns.* 36. *Fergusson vs. Tucker,* 2 *Harr. and Gill,* 189. *Bell vs. Morrison,* 1 *Peters, S. C. R.* 366. 1 *Petersdorf,* 157, *Brazier vs. Clap,* 5 *Massa. Rep.* 10. 2 *Harr. Index,* 89.

EARLE, J. delivered the opinion of the Court.

The Court below delivered an opinion and directed the jury, in this case, that upon all the evidence in the cause, the plaintiffs were not entitled to recover, because such evidence did not show any dissolution of the partnership between *Athey* and *Barger,* in the bricklaying business, or any assignment of its claims, or any knowledge thereof by *Collins,* the defendant; and because the whole of the said evidence, did not furnish legal, or competent proof to go to

the jury of any balance due from the defendant to *Athey*, in his life-time, or if any balance, not of greater amount than the set-off proved by him, upon which the action could be maintained.    If the Court were right as to the dissolution of the partnership between *Athey* and *Barger*, they were clearly in error as to the remaining part of the direction.    The accounts of 1818, and 1819, produced by the defendant in the hand-writing of *Athey*, became evidence in behalf of his estate, and it may be, that by their assistance, the plaintiffs might have been able to separate the debt due to *Shoemaker* and *Athey*, from the debt due to *Athey* and *Barger*, and thereby to show what proportion of the large item of $964,01, in the settled account of the 1st of March, 1820, belonged to the former partnership.    For this, under the evidence given, added to the first and third items of the account, which were undisputed, they might have been entitled to a verdict, subject to a deduction of the sum of the set-off, which was also proved.    We do not pretend to say, that from this source, the plaintiffs would have succeeded to establish this part of their demand against the defendant.    This point the jury alone would have the right to decide ; and that the plaintiffs were deprived of the use of this proof, by the directions of the Court.

All we mean to signify is, that the accounts of 1818 and 1819, might have been used for this purpose by the plaintiffs, and that it should have been left to them to make the attempt, if they had seen proper to do so.    We intend alone to say that those accounts were legal, and competent proof to go to the jury, of the balance due from the defendant to *Athey* in his life-time.    The judgment must be reversed, and the case sent back on a *procedendo*.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**